RECEIVED

MAR 1 2 2019

U.S.D.C.
WP

In this reply at pp. 19-20, Petitioner makes new factual allegations regarding events on the morning of trial.  Mr. Green and the Government are directed to supplement their submissions to address those allegations only. Supplemental submissions are due 6/25/19.  The Clerk shall send a copy of this endorsement to Petitioner.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
            *
            *
            *
Dennis Sica,    *
    Petitioner, *
            *
            *
v.

United States of America
            Respondent./
```

18 Civ. 8959 (CS)

14 Cr. 462 (CS)

Magistrate Judge Case No.:
#7:14-Mj-01380-UA

SO ORDERED.

*Cathy Seibel*

CATHY SEIBEL, U.S.D.J.

6/4/19

PETITIONER'S REPLY TO THE GOVERN-
MENT'S RESPONSE TO PETITIONER'S
MOTION UNDER 28 U.S.C. § 2255

COMES NOW, the Petitioner, Dennis Sica, pro se and in reply to the government's response to Petitioner's § 2255 motion. In support thereof, states as follows: A review of Petitioner's motion, the government's response opposing the motion, and Petitioner's reply in support of his motion, makes clear that the material facts are in dispute. As such, there is a basis for conducting an evidentiary hearing.

Petitioner further contends that dismissal is warranted under the Speedy Trial Act, 18 U.S.C. § 3162(a)(1) because (a) the indictment was filed more than thirty days after his June 9, 2014 arrest on federal charges and (b) no indictment was filed following his arrest for the instant federal charge until July 14, 2014.

Petitioner contends that the government's response to said pro se § 2255 motion is without merit and Petitioner urges this Court to grant Petitioner the relief sought, for the reasons, facts, points and authorities set forth in his pro se motion, combined with this rebuttal.

(1)

Since Petitioner is appearing pro se, he is advised out of an abundance of caution that the denial of his pro se motion and/or traverse at this stage would represent a final adjudication of this case, which may foreclose subsequent litigation on this matter, Griffith v. Wainwright, 772 F.2d 822 (11th Cir. 1985). The Court in Griffith also states "...it is accordingly important that pro se notice be given as to insure (...) opportunity to present every factual and legal argument available." With that in mind, Petitioner respectfully requests that this Court, while assessing Petitioner's traverse that this rebuttal be given due consideration and made part of the record, and held to "less stringent standards than formal pleadings drafted by lawyers. Haines v. Kerner, 404 U.S. 519 (1972).

Given the nature of Petitioner Sica's claims, Petitioner finds it necessary to include a complete copy of his Docket Sheet and Criminal Judgment. See [Attachments].

> **I.) Petitioner Requests The Court To Dismiss The Indictment Because It Was Not Filed Within (30) Days Of His June 9th, 2014 Arrest, As Required By The Speedy Trial Act, 18 U.S.C. § 3161(b).**

The issue before the Court is whether the July 14, 2014 indictment was too late. Petitioner argues that the clock began on June 9, 2014, when he was arrested, but no later than July 14, 2014, when the indictment was filed. The failure to indict him within 30 days of his arrest, he contends, requires the indictment to be dismissed with prejudice.

A.) <u>Arrest to Indictment</u>-

Under the STA, an "indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served a summons in connection with such charges." 18 U.S.C. § 3161(b). This period is extended by thirty days if there is no grand jury session within the first 30 days after the defendant's arrest, see id., and certain categories of delay are excluded from computation of the thirty-day period, see id. § 3161(h).

In the instant case, Petitioner was arrested in connection with the indictment on June 9, 2014. The indictment charged Petitioner with one count of participating in a conspiracy to distribute and possess with intent to distribute mixtures and substances containing a detectable amount of heroin and fentanyl, in violation of Title 21, United States Code, Sections 846. The grand jury returned the indictment against Petitioner on July 14, 2014. Thirty-five days elapsed between Petitioner's arrest and the filing of the indictment.

Petitioner's arrest on federal charges did trigger the provisions of the Speedy Trial Act. Only a federal arrest can trigger the provisions of the Speedy Trial Act. Only a federal arrest can trigger the federal trial clock. Here, Petitioner was indicted on federal charges on July 14, 2014, and arrested for the charges contained in the indictment on June 9, 2014. As such, the time limits established under the Speedy Trial Act was triggered.

(3)

B.) <u>Circumstances Surrounding The Delay</u>-

The indictment in this case was returned 35 days after Petitioner's arrest. The government's failure to indict until 35 days after the arrest was "grossly negligent." Turning to this factor, the government maintains this was an errant docket entry. In its response, the government offered this explanation:

> "Sica's belief that the Speedy Trial Act was violated appears to stem from an errant docket entry indicating that he was arrested on June 9, 2014. As the docket sheet reflects, however, the complaint was not submitted until June 17, 2014. The June 9, 2014, entry therefore appears to be a typographical error on the part of the docketing clerk."

See [<u>Government's Response, Dated: February 5, 2019, P-14</u>]

The government should be forewarned that their position under the act are cause for grave concern. The gap from June 9, 2014 to July 14, 2014, which resulted from an error within the Office of the United States Attorney, is grounds for dismissing the indictment. The government defends the error as "perfectly innocent." To the contrary, this error, while not intentional violated the act. The only remaining question for the Court is whether the dismissal should be with or without prejudice.

The decision whether to dismiss with or without prejudice is entrusted to the district court. See <u>United States v. Wilson</u>, 11 F.3d 346, 352 (2d Cir. 1993); <u>United States v. Giambrone</u>, 920 F.2d 176, 180 (2d Cir. 1990). Under Section 3162, the Court shall consider among other factor(s) (1) the seriousness of the offense; (2) the facts and circumstances of the case which led to the dismissal; and (3) the impact of a reprosecution on the

administration of the act and on justice. 18 U.S.C. § 3162(a)(1). In addit-
ion to these factors, "the Supreme Court has indicated that prejudice to
the defendant should also be considered." Wilson, 11 F.3d at 352 (citing
United States v. Taylor, 487 U.S. 326, 334, 101 L.Ed. 2d 297, 108 S.Ct. 2413
(1988).

This court must find the approach to the requirements of the Speedy
Trial Act exhibited in this case deplorable. The pro forma procedure the gov-
ernment appears to have adopted with respect to an errant docket entry demon-
strates a reckless disregard for the rights of both the public and Petitioner
who have been arrested. As relevant, the Speedy Trial Act provides that "any
information or indictment charging an individual with the commission of an
offense shall be filed within thirty days from the date on which such indiv-
idual was arrested or served with a summons in connection with such charges."
18 U.S.C. § 3161(b); United States v. Gaskin, 364 F.3d 438, 451 (2d Cir. 2004).
The failure to timely file an indictment can result in the dismissal of the
indictment. 18 U.S.C. § 3162(a)(1); Gaskin, Supra. Specifically,

> If in the case of any individual against whom a
> complaint is filed charging such individual with
> an offense, no indictment or information is filed
> within the time limit required by Section 3161(b)
> as extended by Section 3161(h) of this chapter,
> such charge against the individual contained in
> such complaint shall be dismissed or otherwise
> dropped. 18 U.S.C. § 3162(a)(1).

A review of the relevant docket for Petitioner Sica establishes that
Judge Seibel specifically stated on record that Petitioner Sica should receive
credit for time spent in state custody from February 2, 2014 until his arrest
on federal charges on June 9, 2014. See Petitioner Sica's Docket Sheet for
Case #7:14-CR-00462-CS-1, which states:

Judgment In A Criminal Case as to Dennis Sica (1).
The Defendant pleaded guilty to Count 1. Open and
underlying count is dismissed on the motion of the
United States. IMPRISONMENT: Four-Hundred and twenty
(420) months on count one. Defendant should receive
credit for time spent in state custody from February
2, 2014 until his arrest on federal charges on June
9th, 2014. (Signed by Judge Cathy Seibel on 10/23/
2015).

See [Attachment A, Petitioner's Docket Sheet, At Entry #90,
Dated: 10/26/2015]

More importantly, Petitioner's judgment states:

IMPRISONMENT

The defendant is hereby committed to the custody of the
United States Bureau of Prisons to be imprisoned for a total term
of:
Four-Hundred and twenty (420) months on Count one. Defendant should
receive credit for time spent in state custody from February 2, 2014
until his arrest on federal charges on June 9, 2014. Defendant is
advised of his right to appeal.

See [Attachment B, Petitioner's Judgment In Criminal Case, Dated:
October 23, 2015]

Additionally, there is merit to Petitioner's claims. The Speedy Trial
Act's ("STA") thirty-day period in which a defendant must be indicted follow-
ing his arrest expired in this case before an indictment occurred. See 18
U.S.C. § 3161(b). Consequently, the court is required to order the dismissal
of this case. See 18 U.S.C.A. § 3162(a)(1).

Petitioner now asserts that the government is trying to mislead the court. Once the U.S. Federal Authorities arrested Petitioner on June 9, 2014, it triggered the Speedy Trial Act. For Speedy Trial Act purposes, June 9th, 2014 is the starting date for the thirty days for the government to indict the case, see 18 U.S.C. § 3161(b). Absent any exclusion, that period ended on or about July 9th, 2014. Here, "it appears the government's response overlooked the overwhelming evidence in which Petitioner Sica's Criminal Judgment clearly shows this Court specifically stated that Petitioner should receive credit for time spent in state custody from February 2, 2014 until his arrest on federal charges on June 9, 2014. Signed by District Court Judge Cathy Seibel on October 23, 2015. See [Attachment B, Criminal Judgment]

This Court should not agree with the government.


## C.) Ineffective Assistance Of Counsel For Failing To File A Motion To Dismiss The Indictment For A Speedy Trial Violation

Petitioner Sica raises the Speedy Trial Act through the lens of an ineffective assistance of counsel claim. He argues that his counsel rendered constitutionally ineffective assistance by failing to move for dismissal in this Court under the STA. Petitioner argues that his attorney failed to move for dismissal after the government allegedly delayed 35 days between Petitioner's federal arrest and indictment in violation of the 30 day requirement of the Speedy Trial Act, 18 U.S.C. § 3161(b). The STA mandates the dismissal of charges against a defendant who is not indicted, arraigned, or brought to trial within time periods of time set forth in the statute. United States v. Gaskin, 364 F.3d 438, 451 (2d cir. 2004). No more than 30 days can pass before arrest and indictment. 18 U.S.C. § 3161(b)("Section 3161 (b)").

With respect to the performance prong of the Strickland inquiry, Petitioner argues that his counsel's failure to seek dismissal necesarily amounted to deficient performance because Petitioner had a statutory entitlement to dismissal under the Act.

The Sixth Amendment entitles a criminal defendant to the assistance of "reasonably effective" counsel. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984). Reversal due to ineffective assistance is warranted only if a defendant satisfies Strickland's familiar two prong inquiry. First, a defendant must show that his "counsel's representation fell below an objective standard of reasonableness." Id. at 688. Second, a defendant must also show a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. 694.

On the first prong, counsel is ineffective if counsel's acts or omissions fall "outside the wide range of professionally competent assistance." based on "[p]revailing norms of practice" and the "facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 688, 690. Petitioner's counsel fell this standard in failing to move for dismissal after the government allegedly delayed 35 days between Petitioner's arrest and indictment in violation of the 30 day requirement of the Speedy Trial Act, 18 U.S.C. § 3161(b).

Indeed, counsel did not pursue the Speedy Trial Act in violation in this filing, to make the argument that could have resulted in dismissal of the indictment. With respect to this claim, Petitioner contends his trial attorney forced him to plea to a "timebarred" charge. Petitioner contends that counsel should have challenged the pre-indictment delay under the Speedy Trial Act. Pursuant to the Act, 18 U.S.C.§ 3161(b), "the government must charge a defendant by indictment or information within 30 days of his arrest

upon a federal charge...<u>United States v. Woolfolk</u>, 399 F.3d 590, 594 (4th Cir. 2005)(citation omitted). This provision is not triggered merely by the filing of a criminal complaint and the lodging of a detainer against the defendant. Id. at 595. Typically, it occurs when the defendant is under federal arrest or in federal custody. <u>see id.</u> However, in limited circumstances, Speedy Trial Act right may be triggered even though the defendant is not actually in federal custody or arrested by federal authorities. Id. at 596. It is "triggered in those instances where the government has knowledge that an individual is being held by state authorities only to answer to federal charges." Id.

Also, Petitioner contends counsel should have challenged the pre-indictment delay on Sixth Amendment grounds. To prove a violation of the Sixth Amendment, "a defendant must show first that the Amendment's protections have been triggered by arrest, indictment, or other official accusation." <u>Woolfolk</u>, 399 F.3d at 597 (internal quotation marks and citation omitted). The right can be triggered with the filing of a detainer, warrant, and complaint. See id.

Here, counsel failed to object to an indictment that was untimely under § 3161(b) of the Speedy Trial Act.

II.) Petitioner Additionally Requests That The Court Conduct An Evidentiary Hearing To Allow Him To Demonstrate His Counsel Was Ineffective In Light Of The Supreme Court Decisions: Burrage v. United States, 571 U.S. 204, 134 S.Ct. 881, 187 L.Ed. 2d 175 (2014); Lafler v. Cooper, 566 U.S. 156, 132 S.Ct. 1376, 182 L.Ed. 2d 398 (2012); And Lee v. United States, __U.S.__, 137 S.Ct. 1958, 198 L.Ed. 2d 476 (2017).

The Government's position it invokes is inapplicable here. The Government's response is without merit because the Government knowingly chose to omit merits arguments from its response in this case, the Court should either grant the motion or schedule an evidentiary hearing based on Petitioner's ineffective assistance of counsel claims. The Government's eighteen-page response to Petitioner Sica's motion for habeas corpus relief declines to address the merits of Petitioner's ineffective assistance of counsel claims.

Petitioner contends that this Court should conduct a full evidentiary hearing because "even if the Court were to credit [Trial Counsel's] affidavit, [Petitioner] still has advanced a plausible claim." A Petitioner may also be entitled to an evidentiary hearing. Section 2255 provides that a court shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." To determine whether a hearing is necessary, the Court "must review the answer, any transcripts and records of prior proceedings, and any [additional materials submitted by the parties]  Rule 8(a). If a hearing is necessary, the court must appoint an attorney to any moving party who qualifies for the appointment  of counsel under 18 U.S.C. § 3006A. See Rule 8(C). A hearing is generally warranted only where the Petitioner establishes a plausible claim. See Puglisi v. United States, 586 F.3d 209, 213 (2d cir. 2009).

The Second Circuit has further described the standard for holding a § 2255 evidentiary hearing as follows:

> In ruling on a motion under § 2255, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; See, e.g. Pham v. United States, 317 F.3d 178, 185 (2d cir. 2003) (§ 2255 does not permit summary dismissals of motions that present facially valid claims). However, the filing of a motion pursuant to § 2255 does not automatically entitle the movant to a hearing; that section does not imply that there must be a hearing where the allegations are "vague, conclusory, or palpably incredible." Machibroda v. United States, 368 U.S. 487, 495, 82 S.Ct. 510, 7 L.Ed. 2d 473 (1962); see e.g. Chang v. United States, 250 F.3d 79, 85 (2d cir. 2001). To warrant a hearing, the motion must set forth specific facts supported by controverted issues of fact that, if proved at a hearing, would entitle him to relief. See, e.g. Machibroda, 368 U.S. at 494, 82 S.Ct. 510; United States v. Aiello, 814 F.2d 109, 113-14 (2d cir. 1987). Gonzalez v. United States, 722 F.3d 118, 130-31 (2d cir. 2013).

The Petitioner bears the burden of proving entitlement to relief under § 2255 by a preponderance of the evidence. See Galviz Zapata v. United States, 431 F.3d 395, 399 (2d cir. 2005)(citing Williams v. United States, 481 F.2d 339, 346 (2d cir. 1973); see also Triana v. United States, 205 F.3d 36, 40 (2d cir. 2000).

### III.) Ineffective Assistance Of Counsel
### During Plea Negotiations.

Petitioner Sica contends that numerous errors by his attorney constituted ineffective assistance of counsel. In his motion, Petitioner contends that his attorneys who represented him was ineffective at all stages of the proceedings. According to Petitioner, if only his attorneys had been effective, he would not have pleaded guilty.

Petitioner argues that his counsel's performance was constitutionally deficient because he fundamentally and "obviously" "misunderstood" the law governing the "but-for" causation. To warrant a hearing on an ineffective assistance of counsel claim in a section 2255 petition, a defendant must show that he has a "plausible" claim of ineffective assistance of counsel. Armienti v. United States, 234 F.3d 820, 823 (2d cir. 2000). Petitioner states that his "claims of ineffective assistance stem from counsel's advocating [for] a guilty plea to Count one of 21 U.S.C. § 841(b)(1)(C) despite knowing that the Supreme Court [] demanded a higher standard of proof for the enhancement to apply than was present on the record." He contends that his attorney should not have advised him to enter into a plea agreement without "conclusive medical proof" that the heroin he allegedly sold resulted in death and/or serious bodily injury, and relies on the Supreme Court's decision in Burrage v. United States, __U.S.__, 134 S.Ct. 881, 187 L.Ed 2d 715 (2014).

In some cases involving drug overdoses, establishing but-for causation might, as Petitioner suggests, require the Government to employ toxicology reports and experts, to interpret them. For example, in cases where the victim dies or sustains serious injury after ingesting multiple drugs, medical testing, reports, or expert opinion might be necessary to establish

that the victim's death or injury resulted from one drug as opposed to another. (where evidence established that the victim died following an extended drug binge that lasted approximately twenty-four (24) hours and involved ingestion of multiple narcotics, expert testimony was necessary to determine which drug or drugs caused the death and the likelihood that each drug contributed to death); United States v. Ford, 750 F.3d 952, 954-55 (8th Cir. 2014)(where evidence establishes the victim died from polydrug tocicoty, evidence that the mixture of heroin defendant distributed to the victim was merely a contributing factor, with methamphetamine being the major contributing drug, was not sufficient to establish that distribution of the mixture of heroin was the but-for cause of victim's death).

In Burrage v. United States, the Supreme Court held that "at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury." Id at 891. Burrage sold heroin to a long-time drug user, who subsequently injected that heroin in the midst of an extended drug binge. See Burrage, 134 S.Ct. at 887. Importantly, the victim in that case smoked marijuana, injected cooked oxycodone and heroin, and also had more heroin and oxycodone, alprazolam, clonazpam, and other drugs in his possession. Id at 885. At trial, the defendant's expert witness testified that he could not determine whether the addict would have lived had he not taken the heroin supplied by Burrage. Id. at 885-886.

Similarly, in Santillana, the victim's urine screen revealed at least four different drugs: cocaine, amphetamine, benzodiazepines, and methadone. See Santillana, 604 F.3d 192, 193 (5th Cir. 2010).

The Court must conclude that an evidentiary hearing is warranted to conclusively determine off-the-record interactions between Counsel, The AUSA, The Court, and Petitioner. Petitioner Sica renews his argument that in order to render effectice assistance under the two-prong standard in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984), defense counsel was required to counter the government's evidence with medical expert testimony and reports favorable to the defense. He contends that he was prejudiced by counsel's failure to do so.

Statements made during the plea hearing indicate that Petitioner did not have a general understanding of what the government would have to prove were the case to go to trial. Petitioner can establish that he did not understand the government's burden. Because the prosecutor's summary of facts during the plea did not explain the meaning of "resulting in death" or state whether there were intervening causes. So under the circumstances, it cannot be said that Petitioner admitted that the drug distributed by him was the "but-for" cause of death. Thus, Petitioner has satisfied his burden to show that he was potentially convicted of a non-existent offense.

Petitioner contends there was many issues he wanted to explore but his attorney failed to raise them. His counsel was ineffective for not doing everything he promised Petitioner he would do, including failing to interview witnesses. Petitioner blames his unfavorable outcome on "misleading information" and "false promises" from his attorney.

During plea negotiations, Petitioner and his attorney discussed Petitioner's claim that he did not want to plead to the plea agreement if it had language "that death resulted from distribution of the drugs that were distributed as part of the conspiracy." See [**Exhibit A**]. Counsel told Petitioner that none of that mattered, because even without that element he would be facing a life sentence under § 851. See [**Exhibit A**].

This was confirmed at the sentencing hearing when the Court asked if the defense agreed the government could present legally sufficient evidence at trial that death resulted from the distribution of drugs that were distributed as part of the conspiracy. It was defense counsel Mr. Willstatter who answered the question, not Petitioner. See [Sentencing Transcript, at P-18]. In fact, Petitioner stated the following:

> "I have learned that Anthony Delello, Thomas Miller and Laura Brown died as a result of taking drugs that were distributed as part of the conspiracy."

Who did Petitioner learned this information from? This information was provided to Petitioner by counsel. At the time the plea was offerred counsel did no investigation into the facts, law, and circumstances surrounding the deaths in question and the but-for cause of death element. As a result of counsel's failures he could not give Petitioner professional legal advice regarding the plea offer. Here, counsel instructed Petitioner to enter an open plea on the morning of trial was to begin, and doing so counsel exposed, Petitioner to an enhanced sentence based on a "death results element." See Lee v. United States, __U.S.__, 137 S.Ct. 1958, 198 L.Ed. 2d 476 (2017), in which the Court held that an attorney's erroneous legal advice regarding the acceptance of a guilty plea amounts to ineffective assistance of counsel, especially where the deficient performance resulted in the forfeiture of a legal proceeding. Consequently, the Petitioner did not have the guiding hand of counsel at every step in the proceedings

## D.) Failing To Investigate Adequately-

The entirely of Petitioner Sica's argument is that counsel failed to conduct a reasonably adequate investigation before advising Petitioner to forego trial post jury selection and submit to a plea agreement. Petitioner first alleges that his trial attorney failed to hire an expert to presumably rebut the United States' proof that heroin was the "but-for" cause of death. Similarly, if counsel does not adequately investigate the basis for a sentence enhancement, this may amount to ineffective assistance of counsel. Beard, 545 U.S. at 389 (concluding, in capital case that it was unreasonable for defense lawyer to fail to examine defendant's prior conviction file).

In Burrage v. United States, the Supreme Court held that a conviction for death resulting from a controlled substance under 21 U.S.C. 841(b)(1)(C) requires the government to prove "but for" causation and reversed a conviction where the victim used numerous narcotics in addition to the heroin supplied by the defendant and thus the government could not prove that the victim would have lived "but-for" his use of the heroin sold to him by the defendant. 134 S.Ct. 881, 887-88, 187 L.Ed. 2d 715 (2014)(citing Univ. of Texas SW. Med. Ctr. v. Nassar, 133 S.Ct. 2517, 2225, 186 L.Ed. 2d 503 (2013).

Likening his case to that of Burrage, Petitioner relies on the autopsy reports which proves that the victims had a combination of drugs in their systems. The autopsy report of Anthony Delello confirmed that a multi-panel urine screening test was conducted which presumptively disclosed the present of opiates, oxycodone and benzodiazephine. More importantly, Petitioner Sica was charged with distributing heroin and fentanyl but subsequent toxicology tests were conducted for the government by NMS labortories, which reported the presence of heroin (but not Fentanyl). According to witnesses' statements and other documents, Petitioner Sica never just sold heroin.

Petitioner pleaded guilty to possessing a mixture of heroin and fentanyl. Fentanyl played no role whatsoever in Delello's death; no traces of it was found in toxicological analysis. For the government's theory to be true that Petitioner's drugs caused the death of Anthony Delello, it would need to be more likely than not, Petitioner sold heroin that was not laced with heroin to Anthony Delello; that the drugs ingested the day of his death, were the same drugs Petitioner sold.

Also, text messages and 3500 materials revealed that Delello and his girlfriend Kaitlyn Falgiano had expressed an interest that night in procurring oxycondone from another source and exchanged text messages with another acquantence who worked at the Sunoco gas station in effort to find that drug. Moreover, Falgiano, in statements to the government acknowledged that there was a "possibility" that Delello contacted another source that night about obtaining "pills". At least one test conducted by NMS also revealed the presence of substantial amounts of oxycodone, as well as codeine.

In the death of Thomas Miller, the autopsy report confirmed that the NMS-laboratory reported the presence of heroin and fentanyl, the urine screening testing conducted at the time of the autopsy report also disclosed the presence of benzodiazepine. In the death of Laura Brown, Matt Leverich (Brown's brother), and one of the government's witnesses, told the government and defense counsel that he and Brown had obtained heroin from another source that day in Poughkeepsie, New York from a person named "Lefty" (also with the brand name "Breaking Bad").  More importantly, earlier that day, Brown had undergone surgery and was giving fentanyl while in the recovery room. A search of Brown's apartment revealed a large number of heroin bags with a number of different brand names.

How could counsel failed to investigate Brown's death and the source of the drugs. During the course of the interview, Matt Levrich specifically

made a statement that implicated a source from Poughkeepsie, New York who supplied Brown with the brand name "Breaking Bad". There is however, an unexplained gap in the evidence with respect to Brown's heroin use that calls into question whether the heroin that caused Brown's death was from the mixture of heroin and fentanyl that Petitioner distributed. "A substantial possibility exists that someone else gave [Laura Brown] the lethal dose.

Petitioner Sica also contends that counsel was ineffective because he failed to depose medical witnesses or obtain toxicology reports to establish that victims Anthony Delello, Thomas Miller, and Laura Brown, had other drugs in their systems at the time of their overdoses. He contends that such investigation would have enabled counsel to effectively argue that the heroin Petitioner distributed was not an independent cause of the overdoses and, therefore, was not a sufficient basis for imposing liability under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C). He also argues that counsel had a duty to engage independent medical experts who would render opinions consistent with this theory.

Petitioner argues that counsel was obligated to meet the government's evidence with favorable expert testimony and toxicology reports revealing every illicit substance in the victims' systems at the time of their overdoses. Petitioner sell his drugs in glassine bags, instead he sold them in sandwhich bags and the customers would repackaged them in their own glassine bags. There is no evidence that Petitioner sold his drugs in glassine bags. So the absence of packaging is another gap in the government's attempt to link Petitioner to the drugs that killed Anthony Delello, Thomas Miller, and Laura Brown.

Moreover, Kaitlyn Falgiano and Matt Leverich told the government that Anthony Delello and Laura Brown purchased heroin from other sources suggests that there were indeed others from whom Anthony Delello and Laura Brown

obtained drugs as well. Working backwards from Anthony Delello, Thomas Miller, and Laura Brown's deaths highlights the holes in the government case.

Although a close call, the Court cannot conclude that the balance tips in favor of finding that Dellelo, Miller, and Brown's deaths resulted from Petitioner's conduct.

Additionally, Petitioner contends he was coerced into pleading guilty. At the morning of Petitioner's jury selection, there were off-the-record interactions between Trial Counsel, The AUSA, The Court and Petitioner. The Assistant United States Attorney asked the Court if it would be possible to immuninize the central informants before we actually went behind the Judge's chambers and pick the jury which was the reason Petitioner was in the Court-room. Judge Seibel specifically stated that this was a different way but since the central informants were all incarcerated and they are in the Court we could do that before the proceedings starts. At that time, the AUSA told Petitioner's lawyer to advise Petitioner that the government would be filing a § 851 enhancement when the trial start. Petitioner's lawyer objected and went through his legal papers and found a letter from the government stating that under no circumstances would the government be filing a § 851 enhancement. The Government then advised Petitioner's lawyer that the govern-ment had changed their mind. Petitioner's lawyer then stated that he needed a minute with Petitioner to explain this development with Petitioner. Petit-ioner was then taken out of the Courtroom to the holding cell and at that time Petitioner's attorney advised Petitioner that even if he beat the death results enhancement that the conspiracy enhancement alone will give Petition-er a level 43 with a Criminal History Category VI, the guideline range would be life with the added § 851 enhancement. Petitioner then asked his attorney if he could get an adjournment because this was new information, counsel told Petitioner no. Petitioner decided to plead guilty based on this advice

from counsel because this was the only opportunity that would prevent Petitioner from receiving a life sentence, and probably 20 years for something Petitioner should have went to trial for. Petitioner would have pleaded guilty with no binding plea agreement.

To determine whether Petitioner Sica is entitled to an evidentiary hearing on the motion, the court looks "primarily to the affidavit or other evidence proffered in support of the application in order to determine whether, if the evidence should be offered at a hearing, it would be admissible proof entitling Petitioner Sica to relief." LoCascio v. United States, 395 F.3d 51, 57 (2d cir. 2005)(quoting Dalli v. United States, 491 F.2d 758, 760 (2d cir. 1974). Petitioner Sica must set forth specific facts which he is in a position to establish by competent evidence." Id. (quoting Dalli, 491 F.2d at 761).

Petitioner Sica contends "the victims had other drugs in their systems at the time they overdosed. He was told through his lawyer that due to the amount of heroin that was enough alone."


## CONCLUSION

Petitioner Sica contends that his claims relates to causation, arguing that he was legally, factually, and actually innocent of the charge of distributing heroin that was the independent or but-for cause of Anthony Delello, Thomas Miller, and Laura Brown's deaths. Petitioner argues that it was a combination of drugs and heroin that killed Anthony Delello, Thomas Miller, and Laura Brown and that, at most, heroin was a contributing cause. Following Burrage, Petitioner argues that the contributory role played by the heroin was legally insufficient to establish but-for causation required for the enhanced statutory penalty. Lastly, Petitioner argues his counsel was

was ineffective for failing to investigate his case and providing Petitioner with bad advice.

The Court must conclude that an evidentiary hearing is warranted to conclusively determine if Petitioner's counsel was ineffective.

Dated: March 5, 2019                          Respectfully submitted,

                                              _____
                                              Dennis Sica #71171-054
                                              F.C.I. Ray Brook
                                              P.O. Box 900
                                              Ray Brook, New York. 12977

CERTIFICATE OF SERVICE

I, Dennis Sica, the Petitioner, pro se, hereby under the penalty of perjury, submit a true and correct copy of the following docement(s):

> "PETITIONER'S REPLY MOTION TO THE
> GOVERNMENT'S RESPONSE OPPOSING PETIT-
> IONER'S § 2255 MOTION"

By placing said document(s) in the institutional legal mailbox located at F.C.I Ray Brook, with the proper prepaid postage addresses to the Clerk of Court, U.S. Courthouse, Southern District of New York, 300 Quarropas Street, White Plains, New York. 10601, to be electronically file to the below listed partie(s):

                    Scott Andrew Hartman
                    U.S. Attorney's Office
                    One St. Andrew's Plaza
                    New York, New York. 10007

Dated: March 5, 2019                          Respectfully submitted,

                                              _____
                                              Dennis Sica #71171-054

[ATTACHMENT A]

Petitioner Dennis Sica's Docket Sheet

**A. 1**

# U.S. District Court
## Southern District of New York (White Plains)
## CRIMINAL DOCKET FOR CASE #: 7:14-cr-00462-CS-1

Case title: USA v. Sica et al
Magistrate judge case number: 7:14-mj-01380-UA

Date Filed: 07/14/2014
Date Terminated: 10/26/2015

Assigned to: Judge Cathy Seibel

### Defendant (1)

**Dennis Sica**
*TERMINATED: 10/26/2015*

represented by **Theodore Samuel Green**
Green & Willstatter
200 Mamaroneck Avenue
Suite 605
White Plains, NY 10601
914-948-5656
Fax: 914-948-8730
Email: theosgreen@msn.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or*
*Community Defender Appointment*

**Richard David Willstatter**
Green & Willstatter
200 Mamaroneck Avenue
Suite 605
White Plains, NY 10601
(914) 948-5656
Fax: (914) 948-8730
Email: willstatter@msn.com
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

### Pending Counts

CONSPIRACY TO DEFRAUD THE
UNITED STATES
(1)

### Disposition

IMPRISONMENT: Four-hundred and
twenty (420) months on Count One.
Defendant should receive credit for
time spent in state custody from
February 2, 2014 until his arrest on
Federal charges on June 9, 2014.
Defendant is advised of his right to

SDNY CM/ECF Version 6.1.1

# A. 3

Email: benjamin.r.allee@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/09/2014 | | Arrest of Dennis Sica, John Rohlman. (jty) [7:14-mj-01380-UA] (Entered: 06/23/2014) |
| 06/18/2014 | 1 | SEALED DOCUMENT placed in vault.12194 (jty) [7:14-mj-01380-UA] (Entered: 06/20/2014) |
| 06/18/2014 | 2 | SEALED DOCUMENT placed in vault.12193 (jty) [7:14-mj-01380-UA] (Entered: 06/20/2014) |
| 06/18/2014 | | Oral Order to Seal Case as to Sealed Defendant 1.. (Signed by Magistrate Judge Lisa Margaret Smith on 6/17/2014)(jty) [7:14-mj-01380-UA] (Entered: 06/20/2014) |
| 06/18/2014 | 3 | SEALED COMPLAINT as to Sealed Defendant 1 (1), Sealed Defendant 2 (2). (Signed by Magistrate Judge Lisa Margaret Smith) (jty) [7:14-mj-01380-UA] (Entered: 06/20/2014) |
| 06/19/2014 | 4 | Order to Unseal Case as to Sealed Defendant 1, Sealed Defendant 2.. (Signed by Magistrate Judge Lisa Margaret Smith on 6/19/2014)(jty) [7:14-mj-01380-UA] (Entered: 06/20/2014) |
| 06/19/2014 | | COMPLAINT UNSEALED as to Dennis Sica, John Rohlman. (jty) [7:14-mj-01380-UA] (Entered: 06/20/2014) |
| 06/19/2014 | 5 | AFFIRMATION FOR A WRIT OF HABEAS CORPUS AD PROSEQUENDUM of Scott Hartman as to Dennis Sica for 6/19/2014. (jty) [7:14-mj-01380-UA] (Entered: 06/20/2014) |
| 06/19/2014 | | Writ of Habeas Corpus ad Prosequendum Issued as to Dennis Sica for 6/19/2014. (Signed by Judge Magistrate Judge Lisa Margaret Smith on 6/17/2014) (jty) [7:14-mj-01380-UA] (Entered: 06/20/2014) |
| 06/19/2014 | | Arrest of Dennis Sica. (jty) [7:14-mj-01380-UA] (Entered: 06/23/2014) |
| 06/19/2014 | | Minute Entry for proceedings held before Magistrate Judge Lisa Margaret Smith:Initial Appearance as to Dennis Sica held on 6/19/2014. Defendant present with atty Ted Green, AUSA Scott Hartman. Defendant is held in detention, on consent.Preliminary Hearing 7/16/2014. (jty) Modified on 6/23/2014 (jty). [7:14-mj-01380-UA] (Entered: 06/23/2014) |
| 06/19/2014 | | Attorney update in case as to Dennis Sica. Attorney Theodore Samuel Green for Dennis Sica added.. (jty) [7:14-mj-01380-UA] (Entered: 06/23/2014) |
| 06/19/2014 | 7 | CJA 23 Financial Affidavit by Dennis Sica. (Signed by Judge Magistrate Judge Lisa Margaret Smith) (jty) [7:14-mj-01380-UA] (Entered: 06/23/2014) |
| 06/19/2014 | | Set/Reset Hearings as to Dennis Sica: Preliminary Hearing set for 7/16/2014 before Judge Unassigned. (jty) [7:14-mj-01380-UA] (Entered: 06/23/2014) |
| 06/19/2014 | 11 | |

| | | |
|---|---|---|
| | | CJA 20 as to Dennis Sica: Appointment of Attorney Theodore S. Green for Dennis Sica. (Appointed by Magistrate Judge Lisa Margaret Smith on 6/19/14) (ade) (Entered: 07/24/2014) |
| 07/02/2014 | 9 | SEALED DOCUMENT placed in vault. (fk) [7:14-mj-01380-UA] (Entered: 07/02/2014) |
| 07/14/2014 | 10 | INDICTMENT (Felony) filed as to Dennis Sica (1) count(s) 1, 2. (jty) (Main Document 10 replaced on 7/15/2014) (jty). Modified on 7/16/2014 (jty). (Entered: 07/15/2014) |
| 07/17/2014 | | Minute Entry for proceedings held before Magistrate Judge Judith C. McCarthy:Arraignment as to Dennis Sica (1) Count 1,2 held on 7/17/2014. The defendant present with attorney Ted Green. AUSA: Scott Hartman. Court Reporter:Courtflow. The defendant was arraigned on the Indictment, waives public reading, and enters a not guilty plea. The matter has been assigned to Judge Seibel. The speedy trial time is excluded from today until 1st pretrialconference not to exceed July 31, 2014. Any further exclusion of time must be made to the District Judge. The defendant is remanded (jty) (Entered: 07/17/2014) |
| 07/17/2014 | | Minute Entry for proceedings held before Magistrate Judge Judith C. McCarthy: Plea entered by Dennis Sica (1) Count 1,2 Not Guilty. (jty) (Entered: 07/17/2014) |
| 07/17/2014 | | Attorney update in case as to Dennis Sica. Attorney Scott Andrew Hartman for USA added.. (jty) (Entered: 07/17/2014) |
| 07/17/2014 | | Case as to Dennis Sica ASSIGNED to Judge Cathy Seibel. Judge Unassigned no longer assigned to the case. (jty) (Entered: 07/17/2014) |
| 07/21/2014 | | Minute Entry for proceedings held before Judge Cathy Seibel:Status Conference as to Dennis Sica held on 7/21/2014. Defendant is present with counsel, Theodore Green, Esq. AUSA Scott Hartman, Esq. is presentCourt Reporter is: Angela ODonnell Status conference August 27, 2014 at 10:00 a.m. The Court finds excluded time under the Speedy Trial Act as enabling counsel to review the discovery and determine what motions he wants to make outweigh the interests of the public and defendant in a speedy trial. Defendant is Remanded. See transcript. (jty) (Entered: 07/22/2014) |
| 07/21/2014 | | Set/Reset Hearings as to Dennis Sica: Status Conference set for 8/27/2014 at 10:00 AM before Judge Cathy Seibel. (jty) (Entered: 07/22/2014) |
| 08/13/2014 | 12 | SEALED DOCUMENT placed in vault. (fk) (Entered: 08/13/2014) |
| 08/27/2014 | | Minute Entry for proceedings held before Judge Cathy Seibel: Status Conference as to Dennis Sica held on 8/27/2014. Defendant is present with counsel, Theodore Green, Esq. AUSA Scott Hartman, Esq. is present Court Reporter is Albi Gorn. All discovery has been produced. Status conference is scheduled for 10/16/14 at 11:30 a.m. The Court finds excluded time under the Speedy Trial Act through 10/16/14 as enabling counsel to obtain expert assistance to evaluate discovery and what motions, if any, may be necessary, |

SDNY CM/ECF Version 6.1.1

# A. 15

| | | |
|---|---|---|
| | | JUDGMENT IN A CRIMINAL CASE as to Dennis Sica (1). The Defendant pleaded guilty to Count 1. Open and underlying count is dismissed on the motion of the United States. IMPRISONMENT: Four-hundred and twenty (420) months on Count One. Defendant should receive credit for time spent in state custody from February 2, 2014 until his arrest on Federal charges on June 9, 2014. Defendant is advised of his right to appeal. The Court recommends to the NYS Parole Board that any sentence imposed for Violation of Parole imposed on Putnam County Indictment 33-2010 run concurrent to sentence imposed in this case. The Court recommends a facility in the Northeast Region in order to facilitate family visitation, and that defendant receive drug treatment while incarcerated. The defendant is remanded to the custody of the United States Marshal. SUPERVISED RELEASE: Four (4) years on Count One. The defendant is to report ot the nearest probation office within 72 hours of release from custody. It is recommended that the defendant be supervised by the district of residence. SPECIAL ASSESSMENT: $100.00 due immediately. The defendant shall forfeit the defendant's interest in the following property to the United States: $10,543 in U.S. currency. (Signed by Judge Cathy Seibel on 10/23/2015) (lnl) (Main Document 90 replaced on 10/28/2015) (lnl). (Entered: 10/27/2015) |
| 10/27/2015 | 89 | LETTER MOTION addressed to Judge Cathy Seibel from Richard D. Willstatter dated 10/27/2015 re: Return of Seized Funds . Document filed by Dennis Sica. (Willstatter, Richard) (Entered: 10/27/2015) |
| 10/29/2015 | 91 | NOTICE OF APPEAL by Dennis Sica from 90 Judgment. (tp) (Entered: 10/30/2015) |
| 10/29/2015 | | Appeal Remark as to Dennis Sica re: 91 Notice of Appeal. ATTORNEY is Public Defender or Community Defender Appointment / CJA. (tp) (Entered: 10/30/2015) |
| 10/30/2015 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet as to Dennis Sica to US Court of Appeals re: 91 Notice of Appeal. (tp) (Entered: 10/30/2015) |
| 10/30/2015 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files as to Dennis Sica re: 91 Notice of Appeal were transmitted to the U.S. Court of Appeals. (tp) (Entered: 10/30/2015) |
| 11/05/2015 | 92 | TRANSCRIPT of Proceedings as to Dennis Sica re: Sentence held on 10/8/15 before Judge Cathy Seibel. Court Reporter/Transcriber: Albert Gorn, 914-390-4222, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 11/30/2015. Redacted Transcript Deadline set for 12/10/2015. Release of Transcript Restriction set for 2/6/2016. (McGuirk, Kelly) (Entered: 11/05/2015) |
| 11/05/2015 | 93 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Dennis Sica. Notice is hereby given that an official transcript of a Sentence proceeding held on 10/8/15 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice |

# A. 14

Any person, other than the Defendant in this case, claiming an interest in Specific Property must file a petition within sixty (60) days from the first publication of the notice on this official government internet site, or no later thirty-five (35) days from the mailing of actual notice, whichever is earlier. This notice shall state that the petition shall be for a hearing to adjudicate validity of the petitioner's alleged interest in the Specific Property, shall be signed by the petitioner under penalty of perjury, and shall set forth the nature and extent of the petitioner's right, title and interest in the Specific Property, any additional facts supporting the petitioner's claim and the relief sought, pursuant to Title 21, United States Code, Section 853(n). 7. Pursuant to Rule 32.2(b)(6)(A) of the Federal Rules of Criminal Procedure, the Government shall send notice to any person who reasonably appears to be a potential claimant with standing to contest the forfeiture in the ancillary proceeding. 8. Upon adjudication of all third-party interests, this Court will enter a Final Order of Forfeiture with respect to the Specific Property pursuant to Title 21, United States Code, Section 853(n) and Rule 32.2( c)(2) of the Federal Rules of Criminal Procedure, in which all third-party interests will be addressed. 9. All payments on the outstanding Money Judgment shall be made by postal money order, bank or certified check, made payable, in this instance, to the "United States Marshals Service," and delivered by mail to the United States Attorney's Office, Southern District of New York, Attn: Money Laundering and Asset Forfeiture Unit, One St. Andrew's Plaza, New York, New York 10007, and indicate the Defendant's name and case number. 10. Upon entry of this Preliminary Order of Forfeiture as to Specific Property/Money Judgment and pursuant to Title 21, United States Code, Section 853, the United States Marshals Service shall be authorized to deposit the payments on the Money Judgment in the Assets Forfeiture Fund, and the United States shall have clear title to such forfeited property. 11. Pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, upon entry of this Preliminary Order of Forfeiture as to Specific Property/Money Judgment, the United States Attorney's Office is authorized to conduct any discovery needed to identify, locate or dispose of forfeitable property, including depositions, interrogatories, requests for production of documents and the issuance of subpoenas, pursuant to Rule 45 of the Federal Rules of Civil Procedure. 12. The Court shall retain jurisdiction to enforce this Preliminary Order of Forfeiture as to Specific Property/Money Judgment, and to amend it as necessary, pursuant to Rule 32.2(e) of the Federal Rules of Criminal Procedure. 13. The Clerk of the Court shall forward three certified copies of this Preliminary Order of Forfeiture as to Specific Property/Money Judgment to Assistant United States Attorney Jason H. Cowley, Chief of the Money Laundering and Asset Forfeiture Unit, One St. Andrew's Plaza, New York, New York 10007. SO ORDERED. (Signed by Judge Cathy Seibel on 10/8/2015) Three (3) certified copies have been forwarded to AUSA Jason H. Cowley, Chief of the Money Laundering and Asset Forfeiture Unit, One St. Andrew's Plaza, New York, New York 10007. (lnl) (Entered: 10/09/2015)

| 10/26/2015 | | DISMISSAL OF COUNTS on Government Motion as to Dennis Sica (1) Count 2. (lnl) (Entered: 10/27/2015) |
| 10/26/2015 | 90 | |

[ATTACHMENT B]

Petitioner Dennis Sica's Criminal Judgment

AO 245B   (Rev. 09/11) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

Southern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA | )  **JUDGMENT IN A CRIMINAL CASE** |
| v. | ) |
| DENNIS SICA | )  Case Number:  7:14-CR-00462-CS-01 |
| | )  USM Number:  71171-054 |
| | )  Theodore Green, Esq. |
| | Defendant's Attorney |

## THE DEFENDANT:

☑ pleaded guilty to count(s)  One

☐ pleaded nolo contendere to count(s)
   which was accepted by the court.

☐ was found guilty on count(s)
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21 USC 846, 21 USC 841(b)(1)(B) | Conspiracy to Distribute and Possess with Intent to Distribute 100 grams and more of Heroin and 40 grams and more of Fentanyl, a Class A Felony | 2/2/2014 | One |

The defendant is sentenced as provided in pages 2 through ___6___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☑ Count(s)  Open and Underlying  ☑ is  ☐ are  dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

10/8/2015
Date of Imposition of Judgment

*Cathy Seibel*
Signature of Judge

Cathy Seibel, U.S.D.J.
Name and Title of Judge

10/23/2015
Date

A. 234

AO 245B   (Rev. 09/11) Judgment in Criminal Case
          Sheet 2 — Imprisonment

Judgment — Page __2__ of __6__

DEFENDANT:  DENNIS SICA
CASE NUMBER:  7:14-CR-00462-CS-01

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

Four-hundred and twenty (420) months on Count One.  Defendant should receive credit for time spent in state custody from February 2, 2014 until his arrest on Federal charges on June 9, 2014.  Defendant is advised of his right to appeal.

☑ The court makes the following recommendations to the Bureau of Prisons:

The Court recommends to the NYS Parole Board that any sentence imposed for Violation of Parole imposed on Putnam County Indictment 33-2010 run concurrent to sentence imposed in this case.  The Court recommends a facility in the Northeast Region in order to facilitate family visitation, and that defendant receive drug treatment while incarcerated.

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____ ☐ a.m.  ☐ p.m.  on _____

    ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before 2 p.m. on _____

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

Case 7:14-cr-00462-CS Document 118 Filed 08/04/19 Page 31 of 34
Case 7:14-cr-00462-CS Document 118 Filed 10/26/15 Page 3 of 6
**A. 235**

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
          Sheet 3 — Supervised Release

Judgment—Page  3  of  6

DEFENDANT:  DENNIS SICA
CASE NUMBER:  7:14-CR-00462-CS-01

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

Four (4) years on Count One.

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☑ The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. *(Check, if applicable.)* IMPOSITION OF A SPECIAL CONDITION REQUIRING DRUG TESTING AND TREATMENT.

☑ The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. *(Check, if applicable.)*

☑ The defendant shall cooperate in the collection of DNA as directed by the probation officer. *(Check, if applicable.)*

☐ The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense. *(Check, if applicable.)*

☐ The defendant shall participate in an approved program for domestic violence. *(Check, if applicable.)*

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

2) the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4) the defendant shall support his or her dependents and meet other family responsibilities;

5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
           Sheet 5 — Criminal Monetary Penalties

Judgment — Page ___5___ of ___6___

DEFENDANT:  DENNIS SICA
CASE NUMBER:  7:14-CR-00462-CS-01

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| TOTALS | $ 100.00 | $ | $ |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| TOTALS | $            0.00 | $            0.00 | |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐ the interest requirement is waived for the    ☐ fine    ☐ restitution.

    ☐ the interest requirement for the    ☐ fine    ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

**A. 239**

Criminal Notice of Appeal - Form A

# NOTICE OF APPEAL

### United States District Court

Southern _____ District of New York

FILED
U.S. DISTRICT COURT
2015 OCT 29  PM 3: 55
S.D. OF N.Y.W.P.

Caption:

United States of America v.

Dennis Sica                                    Docket No.: 14 Cr 462 (CS)

Hon. Cathy Seibel
(District Court Judge)

Notice is hereby given that Dennis Sica _____ appeals to the United States Court of
Appeals for the Second Circuit from the judgment ✓ , other _____
entered in this action on October 26, 2015 _____.                    (specify)
                          (date)

This appeal concerns: Conviction only |___| Sentence only |___| Conviction & Sentence |✓| Other |___|

Defendant found guilty by plea |✓| trial |  | N/A |

Offense occurred after November 1, 1987? Yes |✓| No |  | N/A |

Date of sentence: October 8, 2015 _____ N/A |___|

Bail/Jail Disposition: Committed |✓| Not committed |  | N/A |

Appellant is represented by counsel? Yes ✓ | No |   If yes, provide the following information:

Defendant's Counsel: Theodore S. Green / Green & Willstatter

Counsel's Address: 200 Mamaroneck Avenue - Suite 605

White Plains, NY  10601

Counsel's Phone: (914) 948-5656

Assistant U.S. Attorney: Scott Hartman

AUSA's Address: 300 Quarropas Street

White Plains, NY  10601

AUSA's Phone: (914) 993-1900

Signature

Dennis Sica
Reg # 711-71-054
Federal Correctional Institution Ray Brook
Po Box 900
Ray Brook, New York 12977



<>71171-054<>
co: Courtclerk Us Dist Court  2ND CIRCUIT
300 Quarropas ST
White Plains, NY 10601
United States

FCI RAY BROOK
P.O. BOX 300 RAY BROOK, NEW YORK

DATE: 3/8/19

"The enclosed letter was processed through special mailing
procedures for forwarding to you. The letter has neither been
opened nor inspected. If the writer raises a question or problem
over which this facility has jurisdiction, you may wish to return the
material for further information or clarification. If the writer
enclosed correspondence for forwarding to another addressee, please
return the enclosed to the above address."

LEGAL MAIL