UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
DENNIS SICA,

       Petitioner,

    -against-

UNITED STATES OF AMERICA,

       Respondent.
-------------------------------------------------------x

ORDER

18-CV-8959 (CS)
14-CR-462 (CS)

Seibel, J.

    Petitioner Dennis Sica has filed a petition under 28 U.S.C. § 2255 alleging that he received ineffective assistance of counsel and that his guilty plea is invalid. (Doc. 109.)[1] Familiarity with the Petition, prior proceedings in the case, the general legal standards governing Section 2255 petitions, and the special solicitude due to *pro se* litigants is presumed.

I.    <u>Ineffective Assistance of Counsel</u>

    To establish ineffective assistance of counsel, a petitioner must affirmatively show that "1) counsel's performance fell below an objective standard of reasonableness according to prevailing professional norms, and 2) it is reasonably likely that prejudice occurred – *i.e.*, that but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 687-96 (1984)). Ineffective assistance during plea negotiations can invalidate a guilty plea to the extent it undermines the voluntary and intelligent nature of the decision to plead guilty. *Id.*

---

[1] All docket references are to No. 14-CR-462.

When evaluating counsel's performance under the first prong of the test, a reviewing court applies a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Counsel's conduct will "fall[] outside this range of reasonableness only if [it] *cannot* be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness." *Barnes v. Burge*, 372 F. App'x 196, 199 (2d Cir. 2010) (summary order) (emphasis in original) (internal quotation marks omitted).[2]

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Strickland*, 466 U.S. at 689 (internal quotation marks and citations omitted).

"Counsel's advice about whether to accept or reject a plea . . . constitutes strategic advice that should not be second-guessed by the court." *United States v. Peterson*, 896 F. Supp. 2d 305, 315 (S.D.N.Y. 2012). Indeed, "strategic choices made after thorough investigation of law and

---

[2]Copies of all unreported cases cited in this Decision and Order will be provided to Petitioner.

2

facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91. "The Second Circuit has noted the difficulty of challenging counsel's strategic decisions after having plead[ed] guilty: to raise a claim despite a guilty plea . . . ,the petitioner must show that the plea agreement was not knowing and voluntary, because the advice he received from counsel was not within acceptable standards." *Yalincak v. United States*, No. 08-CV-1453, 2011 WL 4502817, at *9 (D. Conn. Sept. 28, 2011) (internal quotation marks and citations omitted) (second alteration in original), *reconsideration denied*, 2013 WL 2467922 (D. Conn. June 7, 2013). "Counsel's conclusion as to how best to advise a client in order to avoid, on the one hand, failing to give advice and, on the other, coercing a plea enjoys a wide range of reasonableness because representation is an art, and there are countless ways to provide effective assistance in any given case." *Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000) (internal citation and quotation marks omitted).

Under *Strickland*'s second prong, the reviewing court must determine "whether, absent counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different." *Mayo v. Henderson*, 13 F.3d 528, 534 (2d Cir. 1994). This analysis requires more than "mere outcome determination," but also mandates "attention to whether the result of the proceeding was fundamentally unfair or unreliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993). In the context of a guilty plea, the second prong is met if Petitioner demonstrates "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "[W]hen the defendant's decision about going to trial turns on his prospects of success

and those are affected by the attorney's error," he "must also show that he would have been better off going to trial" – that is, that he had a "viable defense." *Lee v. United States*, 137 S. Ct. 1958, 1965-1966 (2017).

Petitioner bears the burden of establishing both constitutionally deficient performance and prejudice. *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004).

A. <u>Failure to Investigate</u>

Petitioner alleges that his counsel "did no investigation into the facts, law and circumstances surrounding the deaths" of individuals who died after consuming narcotics distributed as part of the conspiracy. (Doc. 110 ("P's Mem.") at 10.) Indeed, he describes as the "entire[t]y" of his argument "that counsel failed to conduct a reasonably adequate investigation before advising Petitioner to forego trial post jury selection and submit to a plea agreement." (Doc. 118 ("P's Reply Mem.") at 16.)[3] Even cursory reference to the record belies this contention.

The docket reveals that Petitioner's counsel made myriad motions and other applications to protect Petitioner's interests, and this Court is aware – from having approved numerous trial subpoenas and numerous expenditures under the Criminal Justice Act – that Petitioner's assigned counsel not only obtained co-counsel to assist with Petitioner's case, but also subpoenaed documents and witnesses and consulted with numerous experts in his effort to defend Petitioner in general and in particular to investigate the extent to which the evidence did or did not show that drugs distributed by Petitioner or his conspirators resulted in, were a but-for cause of, or were the but-for cause of the victims' deaths. Indeed, the declaration of Petitioner's

---

[3]This allegation is puzzling because Petitioner pleaded guilty without a plea agreement and, to the Court's recollection, did so before jury selection began.

counsel sets forth that counsel retained a private investigator, forensic pathologist, toxicologist, and digital forensic examiner. (Doc. 116 ("Green Decl.") ¶ 2.) It is evident from the record that counsel used information from these specialists to support and oppose multiple applications in the run-up to trial. It is also evident – not only from counsel's declaration, (*id.* ¶¶ 12-13, 16, 20), but from the fact that numerous relevant issues were discussed in Petitioner's presence in open court – that Petitioner was apprised of the information obtained from these experts.

Petitioner in reply provides no facts undermining the showing by counsel and the Government that counsel did a thorough investigation. He does not specify any investigation that counsel failed to pursue. *See Powers v. Lord*, 462 F. Supp. 2d 371, 381 (W.D.N.Y. 2008) ("[U]ndetailed and unsubstantiated assertions that counsel failed to conduct a proper investigation have consistently been held insufficient to satisfy either *Strickland* prong.") (internal quotation marks omitted) (collecting cases). Further, at his plea, Petitioner expressed his satisfaction with both of his lawyers, (4/27/15 Transcript of Plea ("Plea Tr.") at 4), an unlikely position to take if indeed counsel's investigation was nonexistent or shoddy or if indeed counsel did not keep Petitioner informed as to what they were doing. Petitioner's allegation of insufficient investigation is not only conclusory, *see Dollison v. Nassau County.*, No. 17-Cv-2804, 2019 WL 3531522, at *9 (E.D.N.Y. Aug. 2, 2019) (vague, conclusory or speculative claims of failure to investigate will not suffice), but is refuted by the record.

Nor can Petitioner show prejudice from any alleged failure to investigate. "A claim of ineffective assistance of counsel based upon failure to investigate or interview witnesses fails when the allegations are conclusory and do not show what evidence could have been uncovered to result in a different trial outcome." *Brown v. Duncan*, No. 00-CV-290, 2006 WL 1977469, at *4 (N.D.N.Y. July 11, 2006). Not only has Petitioner not shown a failure to investigate, but he

5

has not shown that any additional investigation would have been helpful to his cause or how he would have been better off going to trial. *See Dollison*, 2019 WL 3531522, at *9 (petitioner must make comprehensive showing of what investigation would have produced). To the contrary, the arguments he makes here about alleged weaknesses in the Government's case originate in the discovery provided by the Government and the evidence unearthed by his trial counsel. He presents nothing new on this application except his "conclusory allegations that his counsel failed to adequately prepare his case," which "does not satisfy either prong of the *Strickland* test." *Brown*, 2006 WL 1977469, at *13; *see Encarnacion v. McGinnis*, No. 01-CV-586, 2008 WL 795000, at *13 (N.D.N.Y. Mar. 24, 2008) (collecting cases).

    B.    <u>Guilty Plea</u>

Petitioner argues that his counsel did not understand the decision in *Burrage v. United States*, 571 U.S. 204 (2014), and therefore gave Petitioner erroneous legal advice. Petitioner maintains that counsel should not have allowed him to plead guilty absent "conclusive medical proof" that drugs he sold resulted in the users' deaths. (P's Reply Mem. at 12.) This argument, too, is wholly belied by the record. Petitioner's counsel plainly understood the import of *Burrage*, as evidenced by numerous arguments regarding the impact of that case. For example, at the final pretrial conference on April 16, 2015, there was extended discussion of *Burrage* and how it might affect the jury instructions in the case. Petitioner's counsel argued for an interpretation that would have required the Government to prove that drugs distributed by Petitioner were the sole but-for cause of the user's death. The Court rejected that interpretation, finding that under *Burrage* drugs distributed by Petitioner or a conspirator had to be *a* but-for cause of the user's death, but not *the sole* but-for cause.

6

Petitioner's argument here appears to be based on the interpretation of *Burrage* that this Court, and later the Second Circuit, *see United States v. Sica*, 676 F. App'x 81, 84 (2d Cir. 2017) (summary order), rejected. Had Petitioner's counsel advised him that the Government had to prove that his drugs were the sole but-for cause of a victim's death, that advice would have been erroneous. Petitioner's counsel also accurately told Petitioner that, given the Court's ruling, it would be more difficult to obtain an acquittal than if Petitioner's interpretation had prevailed. (*See* Green Decl. ¶ 20.) Counsel also correctly informed Petitioner that he could be convicted of distribution of drugs resulting in death if the Government proved that his drugs were a but-for cause of the death of only one of the three victims. (*Id.* ¶ 12.) This advice may have been disheartening, but it was not wrong. *See United States v. Juncal*, 245 F.3d 166, 172 (2d Cir. 2001) (Attorney's "blunt rendering of an honest but negative assessment of [Petitioner's] chances at trial, combined with advice to enter the plea," does not "constitute improper behavior or coercion that would suffice to invalidate a plea."). "Absent any indication that the [advice] was inaccurate, [Petitioner's] attorney's decision to advise his client to plead guilty must be accorded the presumption of reasonableness." *Gonzalez v. United States*, No. 12-CV-8261, 2013 WL 3305324, at *5 (S.D.N.Y. July 1, 2013). Likewise, because the advice was appropriate, giving it could not have prejudiced Petitioner.

Petitioner also claims, in an affidavit attached to his memorandum of law, that his counsel told him on the morning of jury selection that if he did not plead guilty, the Government would file a prior felony information ("PFI") under 21 U.S.C. § 851, which would result in a mandatory life sentence if Petitioner were convicted. (Doc. 110-1 ¶ 4.) Counsel's subsequent declaration made clear that counsel had advised Petitioner in writing months before trial that the Government had committed to not filing a PFI and that therefore Petitioner would not face a

mandatory life sentence, but that his advisory Sentencing Guidelines range after trial would call for life if he were convicted of the "death resulting" offense. (Green Decl. ¶ 13.) Petitioner in his reply brief then claimed that the Government stated on the morning of jury selection that it had changed its mind about the PFI, and that this turn of events caused him to plead guilty as it was the only way to avoid a life sentence. (P's Reply Mem. at 19-20.) Petitioner further claimed that counsel advised him that even if he "beat the death results enhancement," his Guideline range would be life based on "the conspiracy enhancement alone." (P's Reply Mem. at 19.)[4] He also says that otherwise he would have pleaded guilty "with no binding plea agreement." (*Id.* at 20.)[5] Because these allegations were made only in Petitioner's reply brief, I could have ignored them, *see McCallum v. United States*, No. 14-CR-476-12, 2019 WL 5088587, at *4 (S.D.N.Y. Mar. 1, 2019) (collecting cases), but in an excess of caution I requested that Petitioner's counsel supplement his declaration, (*see* Doc. 119).

Petitioner's version of events is plainly incorrect even absent counsel's supplemental declaration. Most obviously, Petitioner claims he pleaded guilty to avoid a PFI, yet when asked at his plea if his plea was in exchange for any promise or had been induced by any threat, he said no. (Plea Tr. at 15-16.)[6] Further, counsel's original declaration addresses the day of the plea,

---

[4] It is unclear what Petitioner means by "the conspiracy enhancement."

[5] This last statement is nonsensical because, as noted earlier, Petitioner did plead without a plea agreement.

[6] "A federal habeas court is entitled to rely on statements made during an allocution even in the face of a later, contrary claim." *Papetti v. United States*, No. 09-CV-3626, 2010 WL 3516245, at *8 (E.D.N.Y. Aug. 31, 2010) (internal quotation marks omitted); *see, e.g., United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2001) (in rejecting ineffective assistance claim, district court entitled to rely upon defendant's sworn statements in open court that contradicted claim); *Ochoa-Suarez v. United States*, No. 07-CV-9275, 2008 WL 2220637, at *4 (S.D.N.Y. May 27, 2008) ("summarily reject[ing]" petitioner's claim that counsel led her to believe she

and would surely have discussed any such threat or promise had one been made, yet mentions nothing of the kind. In addition, counsel's supplemental declaration makes crystal clear that no such threat was made and that counsel never told Petitioner it had been made. (Doc. 120 ("Green Supp. Decl.") ¶ 4-5.)[7]

Rather, it is plain that counsel told Petitioner, correctly, that the Government was not agreeing to the third acceptance-of-responsibility point under Sentencing Guideline § 3E1.1, and thus that Petitioner's advisory Guidelines range on a plea would be life, rather than the 360-months-to-life that it would have been with the third point. (*Id.*) The same information was provided to Petitioner in the *Pimentel* letter he acknowledged reviewing. (Plea Tr. at 14-15.) And it simply defies credulity that counsel would have advised Petitioner that his Guidelines range would be life after trial even if the jury found the "death results" fact unproven. It is inconceivable that two experienced defense lawyers who had obviously steeped themselves in the applicable law could both have so egregiously misread the applicable Guideline. Further, the *Pimentel* letter made clear that the offense level of 43 – which results in a Guideline range of life in any criminal history category – was based on death resulting from the use of the substances at issue. Counsel also explained in his January 2015 letter to Petitioner that his Guideline range

---

could receive sentence below ten years, where transcript of plea included her acknowledgment of mandatory minimum and statement that no other promises had been made); *Salerno v. Berbary*, 389 F. Supp. 2d 480, 484-85 (W.D.N.Y. 2005) (rejecting challenge to validity of plea where petitioner's allegations in *habeas* proceeding were contradicted by his sworn statements at plea; "[a] trial court may fairly rely upon a [petitioner's] sworn statements made in open court"); *France v. Strack*, No. 99-CV-2510, 2001 WL 135744, at *4 (E.D.N.Y. Jan. 30, 2001) ("Where a petitioner's claims of mistake and coercion find no support in the record and are contradicted by the statements made under oath at the plea proceeding, they do not entitle him to relief.").

[7]Further, even if the Government had changed its mind and stated that it would be filing a PFI before jury selection, that would not show any lapse in representation by counsel.

9

would be life at level 43 *if* the jury found the aggravating factor. (Green Decl. ¶¶ 13-14.) Petitioner was thus aware that the offense level of 43 and the Guidelines range of life was driven by the "offense of conviction establish[ing] that death . . . resulted from the use of the substance." U.S.S.G. § 2D1.1(a)(1). If he were really under the impression that the "death resulting" fact was irrelevant to his Guidelines range, one would think he would have raised that issue upon reviewing the *Pimentel* letter, or during the allocution, when that fact was specifically discussed at some length, (Plea Tr. at 18-19), or after the Presentence Report, which he acknowledged reading and reviewing with counsel, (Doc. 92 at 2-3), was issued.

Further, as the Government argues, (Doc. 117 at 13), Petitioner cannot show prejudice because he cannot show he would have been better off going to trial. *See Lee*, 137 S. Ct. at 1965. As his counsel – and apparently he – appreciated, the odds of the Government failing to prove that his drugs were a but-for cause of any one of the three deaths were slim, and the plea allowed him to demonstrate acceptance of responsibility, which contributed to the below-Guidelines sentence he received.[8]

    C.    Speedy Trial

Petitioner further contends that his counsel was ineffective for failing to move to dismiss the indictment on the ground that it was returned five days later than permitted by the Speedy Trial Act ("STA"), 18 U.S.C. § 3161(b). For essentially the reasons set forth by the

---

[8] Petitioner also argues that his plea was invalid. To the extent he argues that the plea proceeding violated Federal Rule of Crimnal Procedure 11, the transcript reveals that all portions of that statute were honored, but even if they were not, any such violation would not be cognizable via § 2255, which provides relief for constitutional, not statutory, violations. *See Mallard v. United States*, No. 95-CR-379, 2009 WL 1873665, at *3 (E.D.N.Y. June 29, 2009). To the extent Petitioner argues that he did not understand the nature of the charge or its elements, that the Court improperly found a factual basis for the plea, or that his plea was coerced, the transcript belies any such contentions.

10

Government, (Doc. 117 at 14), there was no STA violation. The single docket sheet reference to Petitioner being arrested on "6/9" rather than "6/19" is an obvious typographical error.[9] Petitioner presents no evidence suggesting he was in fact arrested on June 9, 2014. Thus, there was no STA violation counsel could have pursued. Further, even if there were, any violation would no doubt have resulted in a dismissal without prejudice, *see, e.g., United States v. Cortinas*, 785 F. Supp. 357, 360-62 (E.D.N.Y. 1992), followed by reindictment, so Petitioner cannot show that any lapse by counsel, were there one, would have caused any prejudice.

II. Hearing

To obtain a hearing on an ineffective assistance of counsel claim, a defendant "need establish only that he has a plausible claim of ineffective assistance of counsel, not that he will necessarily succeed on the claim." *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) (internal quotation marks omitted).

> Nevertheless, the Circuit has also recognized that "when the judge who tried the underlying proceedings also presides over a § 2255 motion, a full-blown evidentiary hearing may not be necessary." *Raysor v. United States*, 647 F.3d 491, 494 (2d Cir. 2011) (internal quotation and citation omitted). Although the Circuit's "precedent disapproves of summary dismissal of petitions where factual issues exist [ ] . . . it permits a 'middle road' of deciding disputed facts on the basis of written submissions." *Id.* (internal quotations and citations omitted). Indeed, in *Raysor*, where the Court reversed the district court for failing to hold a hearing, the Circuit nevertheless re-affirmed the Circuit's earlier holding in *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001), where the Court had concluded that "[i]t was . . . within the district court's discretion to choose a middle road that avoided the delay, the needless expenditure of judicial resources, [and] the burden on trial counsel and the government" and that the district court "reasonably decided that [live] testimony of [the defendant] and his trial counsel would add

---

[9] The error was thereafter picked up on page 2 of the Presentence Report and on page 2 of the Judgment, (Doc. 90).

> little or nothing to the written submissions" (quoted approving[ly]
> in *Raysor*, 647 F.3d at 494).

*Williams v. United States*, No. 07-CV-1804, 2012 WL 1116403, at *5 (E.D.N.Y. Mar. 30, 2012) (alterations in original); *see Crisci v. United States*, 108 F. App'x 25, 27 (2d Cir. 2004) (summary order) (within court's discretion to decide petitioner's ineffective assistance claim based on affidavits of petitioner and counsel).

Having observed both Petitioner and his counsel throughout the case, including at the time of the plea, I conclude that live testimony from them would add little or nothing to the written submissions. In *Chang*, "the record was supplemented by a detailed affidavit from trial counsel credibly describing the circumstances," and that "record was sufficient to support dismissal of the petition." 250 F.3d at 85. The same is true here. Also as in *Chang*, Petitioner's claim is based "solely on his own highly self-serving and improbable assertions," in contrast to his counsel's "eminently credible" version of events, and thus – especially because I am "intimately familiar with the . . . [relevant] events and circumstances" – it is "within [my] discretion to determine that more [is] not needed." *Id.* at 86; *see, e.g., Padin v. United States*, 521 F. App'x 36, 38 (2d Cir. 2013) (summary order) (evidentiary record sufficient, without live hearing, where court reviewed affidavits and transcripts and had observed petitioner and counsel); *Wang v. United States*, 458 F. App'x 44, 46 (2d Cir. 2012) (summary order) (reasonable for court to decide petition on written record where petitioner's allegations were "incredible in and of themselves" and were contradicted by other affidavits and transcript of plea colloquy); *Puglisi*, 586 F.3d at 214 (for purpose of determining whether live hearing necessary,

a district court need not assume the credibility of factual assertions, as it would in civil cases, where the assertions are contradicted by the record in the underlying proceeding").[10]

## Conclusion

In light of the foregoing, the motion under Section 2255 is denied and the Petition is dismissed. The Clerk of Court is respectfully directed to: 1) terminate Docs. 109 and 112 in No. 14-CR-462; 2) close No. 18-CV-8959; and 3) provide a copy of this Order to Petitioner by mail at the following address: Dennis Sica, No. 71171-054, FCI Ray Brook, Federal Correctional Institution, P.O. Box 900, Ray Brook, NY 12977.

As the Petition makes no substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253; *Matthews v. United States*, 682 F.3d 180, 185 (2d Cir. 2012).

SO ORDERED.

Dated: November 26, 2019
       White Plains, New York

                                                                                           CATHY SEIBEL, U.S.D.J.

---

[10]The Court credits counsel over Petitioner for several reasons – apart from the Court's experience with counsel over twenty-plus years, including their honorable service on the Court's Criminal Justice Act Panel – including: 1) Petitioner's obstructive conduct, such as lying to the police about an overdose that occurred in his apartment, (*see* Doc. 85 at 3), and telling his co-conspirator, after a customer's overdose death, to erase Petitioner's messages from the co-conspirator's phone, (*see id.* at 4); 2) his apparent pride in that sort of conduct, as evidenced in letters from jail in which he stated, "I'm a beast of beating cases especially drug cases but I also know motions and tricks to beat cases," (Doc. 85-1 at 11), and "they always think they finally got me and there gonna put my lights out but it ain't happening this time either," (*id.* at 2); and 3) his repeated blatantly false statements in connection with the instant petition about his counsel doing no investigation.

13